UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Darren Brady

    v.                                   Case No. 20-cv-209-SM

Wendy E. Roberts et al.


**REPORT AND RECOMMENDATION**

Plaintiff Darren Brady, proceeding pro se, has filed a civil rights action under 42 U.S.C. § 1983 alleging that the defendants — Lancaster Prosecutor Wendy E. Roberts, Lancaster Police Officer Anthony Havalotti (in his individual capacity), and Lancaster Town Manager Ed Samson – unlawfully arrested and prosecuted him, thus depriving him of his constitutional rights. His complaint (Doc. No. 1) is before the magistrate judge for preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).

I. **Preliminary review standard**

The court conducts a review of cases filed by pro se plaintiffs to determine, among other things, whether the complaint states any claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court

1

treats as true all well-pled factual allegations and construes all reasonable inferences in plaintiff's favor. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12-13 (1st Cir. 2011). The court may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted). The court may dismiss a pro se plaintiff's case at any time if the complaint fails to state a claim on which relief may be granted, the defendant is immune from the relief sought, or the action is frivolous or malicious. See 28 U.S.C. § 1915(e)(2).

**II.   Background**

A.   **Report of an indecent exposure**

On May 1, 2019, Theresa Blaisdell – a non-party to this litigation – contacted the Lancaster, New Hampshire Police Department ("LPD") to report an indecent exposure that had occurred at her apartment building, located at 4 Elm Street, Lancaster, New Hampshire. See LPD Report (Doc. No. 1-3, at 4). According to Blaisdell, one of her tenants – Aubury Boudle – had seen a man expose himself in the parking lot earlier that day. Defendant Havalotti, an LPD officer, responded to the call and told Blaisdell that he would contact Boudle. Id.

Later that day, Havalotti made contact with Boudle and asked him about what had transpired. Id. Boudle allegedly told

2

Havalotti that he went to open the shades of his apartment window, which faced the parking lot, and noticed a black male urinating against the building. Id. Two weeks later, Havalotti returned to Boudle's apartment and specifically asked if Boudle saw the male's penis, to which Boudle confirmed he did. Id. Boudle elaborated that he also saw the male grab small bags from a car before giving them to tenant Donald Wells. Id. Boudle had learned from Wells that the male referred to himself by the nickname "N\*\*\*a D". Id. When Boudle later spoke to Blaisdell about the incident, Blaisdell told Boudle that the man's legal name was Darren Brady. Id. Boudle included this information in a second written statement for Havalotti, which the officer retrieved later that night. Id.

B.  **Initiation of criminal process**

On May 20, 2019, Havalotti filed a criminal complaint against Brady in New Hampshire Circuit Court, 1st Circuit – District Division – Lancaster, for indecent exposure, a Class A misdemeanor. Indecent Exposure Crim. Compl., State v. Brady, No. 451-19-CR-198 (N.H. Cir. Ct., 1st Cir., Dist. Division – Lancaster) (Doc. No. 1-3, at 5). On an unspecified date thereafter, Lancaster police arrested Brady. The Circuit Court then released Brady on personal recognizance pending his arraignment. See Circuit Court Bail Order, State v. Brady, No. 451-19-CR-198 (Doc. No. 1-3, at 1).

3

In July 2019, Brady was arraigned on the indecent exposure charge, as well as on charges of criminal trespass and disorderly conduct, for events occurring at the 4 Elm Street apartment complex in April 2019.  See id.; Case Summary, State v. Brady, Nos. 451-19-CR-194 and -198 (N.H. Cir. Ct., 1st Cir., Dist. Div. – Lancaster) (filed in Brady v. Roberts, No. 20-cv-208-PB, ECF No. 1-1, at 4-5).[1]

On September 30, 2019, a trial was held on the indecent exposure, criminal trespass, and disorderly conduct charges.  See Doc. No. 1-3, at 1.  Defendant Wendy E. Roberts served as prosecutor for the LPD.  Compl. (Doc. No. 1, at 1).  The court found Brady not guilty on the indecent exposure charge.  Case Summaries, State v. Brady, No. 451-19-CR-194 & -198 (filed in Brady v. Roberts, No. 19-cv-147-PB (ECF No. 1-5, at 1-5)).  Additionally, it dismissed the criminal trespass and disorderly conduct charges for lack of prosecution.  Id.

C.  **Brady's claims for relief in this case**

Construed liberally, Brady's complaint attempts to assert the following four claims against defendants Wendy Roberts,

---

[1] In addition to the instant lawsuit, Brady filed a second complaint in this court against a set of defendants that includes two of the defendants here (Lancaster Police Prosecutor Wendy E. Roberts and Town Manager Ed Samson), concerning an allegedly false arrest in April 2019.  See Brady v. Roberts et al., No. 20-cv-208-PB (ECF No. 1).  The court takes judicial notice of that case and the documents submitted by Brady therein to aid its understanding of Brady's instant claims for purposes of this preliminary review.

Anthony Havalotti, in his individual capacity, and Lancaster Town Manager Ed Samson.

    1.    **Malicious prosecution**.  Brady asserts that that the defendants maliciously prosecuted him, in violation of his Fourth and/or Fourteenth Amendment rights and thus 42 U.S.C. § 1983, by waiting seventeen days to investigate the reported incident and initiating criminal charges on the uncorroborated and unreliable word of Boudle.  See Compl. (Doc. No. 1, at 1, 4) (further alleging that Boudle is a "junkie" and "has to do anything" Blaisdell tells him to do).  In Brady's view, the indecent exposure prosecution was part of a pattern of malicious and false actions by state officials, which he has allegedly succeeded at defeating on at least some occasions.  Compl. (Doc. No. 1, at 4); see also Brady Criminal History (Doc. No. 1-3, at 8); Brady Notes (Doc. No. 1-3, at 32-34).

    2.    **False arrest**.  Brady contends the defendants violated his Fourth and Fourteenth Amendment rights by unreasonably searching and seizing his person in connection with the alleged false arrest for indecent exposure.  Compl. (Doc. No. 1, at 1).

    3.    **Reputational harm**.  Brady argues that the defendants unlawfully invaded his privacy because Havalotti's false arrest, based on Boudle's non-credible report, got Brady's "name in the newspaper" and "police internet website," and caused Brady to lose his job and home.  Id. at 6.  He further asserts that he is

"having a very hard time finding work in [his] field because of being falsely arrested in public over and over . . . ." Id. His complaint intimates that these acts violated unspecified rights owed to him under the U.S. Constitution.

    4.   **Right to a grand jury.**  Brady alleges that the defendants violated his Fifth and Sixth Amendment rights by accusing him of a serious crime without a grand jury investigation or indictment. Id. at 2.

### III. Analysis

The court finds that Brady has sufficiently stated two claims upon which relief may be granted that survive preliminary review – specifically, his claims of malicious prosecution (Claim 1) and false arrest (Claim 2). The district judge should dismiss, however, all claims against defendants Ed Samson and Wendy Roberts, as well as Brady's third claim concerning reputational harm and his fourth claim concerning his right to a grand jury, as these claims cannot be sustained or saved.

A.   **Dismissal of defendant Ed Samson**

In his complaint, Brady names Ed Samson, the Town Manager of Lancaster at the time of the above-alleged events, as a defendant. Brady does not allege that Samson engaged in or contributed to any actions that violated his constitutional rights. To the contrary, Brady concedes that Samson "personally did nothing wrong and his name is only on this legal form to

6

keep up with a previous (sic) made response (motion to dismiss by W.E. Roberts) on a previous case that stated in short – my claim should be dismissed because I didn't serve the right people." Compl. (Doc. No. 1, at 5). Brady does not provide further details about why Samson was a necessary party in his previous case or why Samson is a necessary party in this proceeding. Brady has not named the Town of Lancaster or any municipal agency as a defendant. Moreover, he seeks only monetary damages ($300,000) for the claims identified herein, and thus has not sought injunctive relief requiring that the Lancaster Town Manager be named as a defendant. Accordingly, the district judge should dismiss Claims 1-4 to the extent they are asserted against Samson and drop Samson as a defendant in this case.

B.  **Prosecutorial immunity**

Brady names Roberts, the prosecutor in his indecent exposure case, as a defendant. "[P]rosecutors are absolutely immune in exercising the core prosecutorial functions of 'initiating a prosecution and . . . presenting the State's case,'" Penate v. Kaczmarek, 928 F.3d 128, 135 (1st Cir. 2019) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976)), "'and which occur in the course of [the prosecutor's] role as an advocate for the State,'" id. at 136 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)).

7

Roberts's conduct, as alleged, occurred entirely as part of the core prosecutorial functions of bringing and maintaining criminal cases for the State. Accordingly, to the extent Brady seeks damages for those claims, Roberts enjoys absolute immunity from suit. The district judge should dismiss Claims 1-4 to the extent they are asserted against Roberts and drop Roberts as a defendant in this case.

C.  **Claim 1: Malicious prosecution**

Brady first contends that the defendants maliciously prosecuted him in violation of 42 U.S.C. § 1983 and his constitutional rights. In advancing these allegations, Brady makes passing references to his Fifth Amendment rights, which do not apply to state government actors. See U.S. Const. amend V. (restricting the federal government). At times, he also describes the events above as "prosecutorial misconduct." The court liberally construes these allegations as essentially pleading a malicious prosecution claim arising under state law and the Fourth and Fourteenth Amendments of the United States Constitution.

"[A] plaintiff may bring a suit under § 1983" against State officials for a malicious prosecution claim if he or she "can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's

8

favor.'" Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).  Similarly, under state law, the elements of malicious prosecution are: "(1) the plaintiff was subjected to a criminal prosecution . . . instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor." Farrelly v. City of Concord, 168 N.H. 430 (2015).

Here, Brady alleges that Havalotti successfully initiated criminal process against him, based upon personal animus and information that he knew to be false; that this prosecution was part of a pattern of false and malicious prosecutions; and that the criminal proceedings for indecent exposure terminated in Brady's favor.  These and other allegations in the complaint are sufficient to state a claim for malicious prosecution that survives preliminary review.  In an Order issued this date, the court has directed service of Brady's malicious prosecution claims against Havalotti.

D.   **Claim 2: False arrest and false imprisonment claims**

Brady contends the defendants violated his Fourth and Fourteenth Amendment rights by unreasonably searching and seizing his person in connection with the allegedly false arrest for indecent exposure.  "The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'"  Manuel v. City of Joliet, 137 S.

9

Ct. 911, 917 (2017). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." Bailey v. United States, 568 U.S. 186, 192 (2013) (internal quotation marks and citation omitted). To assert a false arrest claim under the Fourth Amendment, a plaintiff must state facts showing that he was arrested without probable cause. Similarly, to prevail on a state law claim for self-imprisonment, a plaintiff must demonstrate that "(1) the defendant acted with the intent of confining him or her within boundaries fixed by the defendant; (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority," such as probable cause. Ojo v. Lorenzo, 164 N.H. 717, 726 (2013) (citations omitted); see also Wallace v. Kato, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter. 'Every confinement of the person is an imprisonment[.]'" (internal citation omitted)).

Here, Brady alleges that Havalotti arrested him, or successfully sought a warrant for his arrest, based upon personal animus and information that he knew to be false; that as a result of his arrest, he was detained pretrial; and that he has been unable to find work in his chosen field and has

suffered economic, mental, and emotional harm due, in part, to this arrest and detention.  These and other allegations, taken as true for purposes of initial review, sufficiently state a claim for false imprisonment and false arrest, to survive initial review.  In an Order issued this date, the court has directed service of Brady's false imprisonment and false arrest claims against Havalotti.

E.    **Claim 3: Reputational Harm**

Brady argues that the defendants unlawfully harmed his reputation, as his allegedly false arrest and prosecution were publicized in the newspaper, making it difficult for Brady to find work.  The court liberally construes Brady's allegations as an attempt to seek relief for reputational harm through a § 1983 due process claim under either an unreasonable government interference or stigmatization theory.  Brady's allegations, taken as true for purposes of preliminary review, fall short of stating a due process claim under either theory.

"The right to hold private employment and to pursue one's chosen profession free from unreasonable government interference is encapsulated" in the Fourteenth Amendment's Due Process Clause.  Mead v. Indep. Ass'n, 684 F.3d 226, 232 (1st Cir. 2012).  To state a due process claim based on unreasonable government interference, a plaintiff must show the that the government directly and unambiguously interfered with his or her

right "to hold private employment" or "to pursue one's chosen profession," such as when a city official demands that a restaurant fire its bartender . . . ." Id. (citing Helvey v. City of Maplewood, 154 F.3d 841, 843–44 (8th Cir. 1998)). Additionally, to state a due process claim based on reputational stigmatization, a must allege "stigma-plus . . a change in the injured person's status or rights under substantive state or federal law." Silva v. Worden, 130 F.3d 26, 32 (1st Cir. 1997).

Brady's allegations do not satisfy either of these requirements. Brady has not alleged that Havalotti or any other state official directly and unambiguously interfered with his employment, such as by directly contacting his employer. Additionally, he has not alleged that his publicized arrest and prosecution resulted in a change to his status or rights under state or federal law. The district judge should therefore dismiss Brady's reputation-based claim.

F.  **Claim 4: Grand jury**

Lastly, Brady argues that the defendants violated his Fifth and Sixth Amendment rights by accusing him of a serious crime without a grand jury investigation or indictment. "The Fifth Amendment right to a grand jury does not apply to a state prosecution. A state defendant cannot complain if the State forgoes the institution of the grand jury and proceeds against him instead through prosecutorial information, as many States

12

prefer to do." Castaneda v. Partida, 430 U.S. 482, 509 (1977) (citing Gerstein v. Pugh, 420 U.S. 103, 116–119 (1975); Hurtado v. California, 110 U.S. 516 (1884)).

New Hampshire is one such state that forgoes grand juries specifically in the criminal misdemeanor context. In New Hampshire, "no person shall be tried for any offense, the punishment of which may be death or imprisonment for more than one year, unless upon an indictment found against such person by the grand jury." N.H. Rev. Stat. § 601:1; see also N.H. R. Crim. P. 7 & 8 (discussing charging procedures in Superior Court, which include an indictment returned by a grand jury). Consistent with the New Hampshire Constitution, however, the State may charge a misdemeanor through an information" or criminal complaint, which does not require a grand jury, if the punishment for the offense is less than one year. State v. Smith, 144 N.H. 1, 4 (1999) (finding that a misdemeanant was not entitled to a grand jury even when he faced a potential sentence enhancement exceeding one year of imprisonment based on prior convictions); State v. Gerry, 68 N.H. 495, 499 (1896); N.H. R. Crim. P. 4 (initial criminal proceedings in circuit court-district division). Felony offenses, of course, must still be charged with an indictment. See N.H. Rev. Stat. § 601:1.

Here, the criminal complaint against Brady for the events of May 1, 2019 charge him with indecent exposure as a Class A

misdemeanor. See also N.H. Rev. Stat. § 645:1 (indecent exposure/gross lewdness statute). Under N.H. Rev. Stat. § 651:2, "a person convicted of . . . a Class A misdemeanor may be sentenced to imprisonment, probation, conditional or unconditional discharge, or a fine." And if "a sentence of imprisonment is imposed, the court shall fix the maximum thereof which is not to exceed . . . One year for a class A misdemeanor." Id. Accordingly, the defendants were under no requirement to charge Brady for indecent exposure through an indictment returned in Superior Court and acted well-within their legally authorized discretion by filing a complaint in Circuit Court.

Brady's allegations, construed liberally, fail to state a claim regarding the denial of grand jury proceedings. The district judge should thus dismiss Brady's grand jury claim.

**IV. Conclusion**

For the reasons set forth in this Order, the district judge should dismiss Claims 1-4 to the extent they are asserted against Ed Samson and Wendy Roberts, drop Samson and Roberts as defendants, and dismiss Brady's reputational claim (Claim 3) and his grand jury claim (Claim 4) in their entirety. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon

14

motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                 _____
                                                 Andrea K. Johnstone
                                                 United States Magistrate Judge

January 14, 2021

cc: Darren Brady, pro se